UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSALIND BLAIR, Personal
Representative of the Estate of
MARQUISE BLAIR, Deceased,

          Plaintiff,           No. 08-CV-15090

vs.           Hon. Gerald E. Rosen

WAYNE COUNTY DEPUTY
SHERIFF GREGORY HARRIS
and COUNTY OF WAYNE,

          Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT
## WAYNE COUNTY'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     September 23 2010

PRESENT:   Honorable Gerald E. Rosen
                   United States District Chief Judge

Plaintiff Rosalind Blair, mother and personal representative of the estate of Marquise Blair, deceased, brought this Section 1983 action alleging that her son was shot and killed by Defendant Gregory Harris, an off-duty Wayne County Deputy Sheriff, without justification and in violation of the Fourth and Fourteenth Amendments. Ms. Blair further alleges that Defendant Wayne County, through its policies and practices, directly and proximately caused the violation of her son's constitutional rights.

1

This matter is presently before the Court on Defendant Wayne County's Second Motion for Summary Judgment.[1] Plaintiff has responded to the County's Motion.

Having reviewed the parties' briefs, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, the Court will decide the motion "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL BACKGROUND[2]

At approximately 1:00 a.m. on August 5, 2007, Defendant Gregory Harris, a Wayne County Sheriff's Deputy,[3] was dozing in the upstairs bedroom of his home on Flanders Street in Detroit when his stepdaughter, Rachel, yelled to him that there was someone inside his van (which was parked in front of the house) trying to steal it. Having discovered evidence of a prior attempt to break into his van two weeks earlier,

---

[1] Wayne County is not representing or indemnifying individual Defendant Harris and Default has been entered against him for failure to answer or otherwise plead.

[2] These facts are taken from the various police reports of the events of August 5, 2007, including witness statements and the Internal Affairs Department's Report of its interview with Defendant Harris. Plaintiff has not offered any contradictory evidence concerning the events of that night and does not dispute the veracity of Defendant's evidence.

[3] At the time of the events giving rise to this action, Harris's duty assignment with the Sheriff's Department was the Wayne County Jail.

Harris went downstairs so he could observe his vehicle through the front window.

Harris observed a black male, who was subsequently identified as the Plaintiff's decedent, Marquis Blair, inside his van behind the steering wheel. Harris ran back upstairs and retrieved his personal SIG Sauer 9mm handgun, loaded it and ran back downstairs. He exited the front door with his gun drawn and yelled to Blair, "Halt. Stop. Police. It's a police officer's van." According to Harris, Blair looked toward him, extended his arm in his direction, and pointed what Harris described as a long, shiny object at him. Thinking this object was a firearm and fearing for his life, Harris fired four or five shots at Blair through the passenger window of the van. Blair did not return fire but instead ducked under the steering wheel and exited the van through the open driver's side door. Harris approached the van, and as he moved toward the front end of the vehicle Blair ran past him. As he did so he turned toward Harris and reached into his waistband. Harris perceived this movement as an additional threat to his safety and fired several shots again at Blair as he pursued him. Blair fell to the ground at the intersection of Hayes and Houston-Whittier.

Harris stated that when he reached Blair, he attempted to check his vitals when he heard additional gunshots and saw a silver four-door Chrysler sedan stopped in the middle of Hayes. He saw a passenger of the vehicle standing near the door of the car and saw muzzle flashes. Realizing he had emptied his entire magazine from his weapon, and fearing for his life, Harris fled through alley and yelled to a neighbor on the way to call

3

911.

Four witnesses interviewed by the Detroit Police corroborated Harris's version of Blair being in possession of an object perceived as a weapon, all of these witnesses stated that they saw an individual drive up in a silver vehicle and take an object from Blair's hand as he lay on the ground before Harris reached him. Several other witnesses stated that they heard two different weapons being discharged in the incident.

The police later arrested two other individuals (presumably individuals who were in the silver car observed Harris and the witnesses) who admitted being accomplices of Marquis Blair in the attempted theft of Harris's van. One of the arrestees admitted they fired at least one shot from a rifle at Harris as he stood over Blair at the intersection of Hayes and Houston-Whittier.[4]

Marquis Blair was transported from the scene to St. John's Hospital in Detroit and was pronounced dead on arrival. Though the Wayne County Medical Examiner pronounced Blair's death as a homicide, no criminal charges were brought against Harris. The Prosecutor's Office determined that the homicide of Blair was committed in lawful self-defense and in the apprehension of a fleeing felon.

On December 9, 2008, Marquis Blair's mother and the personal representative of

---

[4] No weapon other than Defendant Harris's was recovered but one assault rifle casing, in addition to the 9mm Luger casings from Harris's gun, was found near the center of Hayes. [*See* Evidence Technician Report, p. 2.] The only other weapon recovered was a 12" master mechanic screwdriver; Harris's stepdaughter, Rachel, told the police that she saw Blair trying to force a screwdriver into the ignition of Harris's van. [See Plaintiff's Ex. B.]

his estate filed the instant lawsuit. In Count I of her Complaint, Plaintiff claims that Defendant Harris's use of excessive and deadly force resulted in the violation of Marquis Blair's Fourth and Fourteenth Amendment rights. In Count II, Plaintiff claims that Wayne County's policy of failure to properly train its officers, including Defendant Harris, directly caused the violation of Marquis Blair's constitutional rights. The five-month period of discovery is closed and Wayne County now moves for summary judgment.

### III. DISCUSSION

#### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c)(2).

As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). However, the nonmoving party "may not rely merely on allegations or

5

denials in its own pleading," but "must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, all affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find" for the nonmoving party, the motion should be granted. *Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Co.*, 475 U.S. 574, 587 106 S.Ct. 1348, 1356 (1986); *Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).

The Court will apply these standards in deciding Wayne County's motion for summary judgment in this case.

B.  BECAUSE DEFENDANT HARRIS'S ACTIONS WERE PRIVATE IN NATURE AND DID NOT CONSTITUTE "STATE ACTION," NO CLAIM CAN BE MAINTAINED AGAINST THE COUNTY

A threshold issue in any Section 1983 action is whether there was any "state action" involved. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988). The plaintiff must establish both that (1) he was deprived of a right secured by the Constitution or laws of the United States and

(2) the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail. *See id.* at 375. In this case, the specific question presented regarding this issue is whether Defendant Harris was "acting under color of law" at the time of the incident complained of. If Plaintiff cannot establish § 1983 liability as to Defendant Harris (because his actions were private in nature and not "state action"), no claim can be maintained against the municipality. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). In *Heller*, the Supreme Court held that a municipal entity cannot be held liable under a *Monell*[5] theory where there is no underlying constitutional violation by the individual officer. The Court specifically held:

> If a plaintiff has suffered no constitutional violation at the hands of the individual police officer, the fact that the department regulations might have authorized use of constitutionally excessive force is quite beside the point.

*Id. See also Claybrook v. Birchwell*, 199 F.3d 350, 361 (6th Cir. 2000); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876 (6th Cir.), *cert. denied*, 531 U.S. 874 (2000).

Whether an officer was acting under color of law is a question of law for the court to decide. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

The Supreme Court has held that acting under color of state law requires that the defendant in a § 1983 action have exercised the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

---

[5] *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1985).

*West*, 487 U.S. at 49. "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. Morristown, Tenn.*, 242 F.3d 353, 359 (6th Cir. 2001). Therefore, not every action undertaken by a person who happens to be a state actor is attributable to the state. *Id.* As the *Waters* court explained:

> [A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.

*Id.* (citations omitted). To be actionable, the conduct allegedly causing the deprivation of a constitutional law must be "fairly attributable" to the state. *Id.*

In determining whether a police officer acted under color of state law, the Sixth Circuit has explained:

> [T]he fact that police officer is on or off duty, or in or out of uniform is not controlling. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.

*Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). Accordingly, [a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Id., citing Monroe v. Pape*, 365 U.S. 167 (1961). Only where an officer purports to exercise official authority does he or she act under color of state law. *See Mooneyhan v. Hawkins*, 197 WL 685423 at *4 (6th Cir. 1997). Manifestations of official authority include flashing a badge, identifying oneself as an officer, placing an individual under

8

arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations. *Id.* However, all of the relevant circumstances must be considered. *Swiecicki v. Delgagdo*, 463 F.3d 489, 496 (6th Cir. 2006).

In *Swiecicki*, the defendant was an off-duty police officer who wore his police uniform and carried his police weapons while working as a security guard at a baseball park. The Sixth Circuit determined that he was acting under color of law when he escorted an unruly fan from the stands and wrestled him to the ground. The court reasoned,

> [W]e believe the record establishes that Delgado was a state actor from the beginning of the incident in question because he "presented himself as a police officer." *Parks*, 395 F.3d at 652. Our conclusion is based not only on Delgado's attire, badge, and weapons, but also on the fact that Delgado told Swiecicki that "[w]e can either do this the easy way or the hard way." We recognize that these words, standing alone, would not necessarily rise to the level of a threatened arrest. After all, if a private citizen. . ., or a fellow Indians fan, had warned Swiecicki in a similar manner, no threat of arrest would have been present. And if Delgado had simply asked Swiecicki to calm down or risk being ejected from the game, we would be unable to conclude that Delgado acted under color of state law. *See Watkins v. Oaklawn Jockey Club*, 183 F.2d 440, 443 (8th Cir.1950) (holding that an off-duty deputy sheriff who worked as a security guard at a race track was not acting under color of state law when he ejected a patron because the deputy sheriff acted in the same manner that a civilian employee of the track would have acted).
>
> But we are required to consider all of the relevant circumstances. *See Parks*, 395 F.3d at 652 ("[A]ll of these factors combined create the presumption of state action."). Rather than calmly asking Swiecicki to leave the stadium, Delgado, while wearing his uniform and carrying his official weapons, threatened Swiecicki and forcibly removed him from the bleachers. This evidence, combined with the fact that Delgado was hired by Jacobs Field to intervene "in cases requiring police action" suggests that his

9

warning to Swiecicki amounted to a threat of arrest.

463 F.3d at 496-97.

Similarly, in *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980), an officer was found to have acted under color of state law where he had authority under law to carry his weapon, the argument between the plaintiff and the officer arose as a result of the officer's performance of his official duties on a prior occasion, and threats that were made to the officer by the plaintiff were communicated to the officer through the police agency. In *Stengel v. Belcher, supra*, the court found that an officer acted under color of state law where he intervened in an altercation, used his department-issued mace and handgun, and attempted to arrest those individuals involved in the altercation.[6]

By contrast, in *Bonsignore v. City of New York*, 683 F.2d 634 (2d Cir. 1982), the Second Circuit found no state action on the part of a police officer who was off-duty when he shot and seriously wounded his wife using his off-duty revolver, notwithstanding the City's requirement that off-duty police officers carry a gun at all times while within the City limits because his actions were not committed in the

---

[6] The law of other circuits is similar. In *Pickrel v. City of Springfield*, 45 F.3d 1115, 1117-18 (7th Cir. 1995), an officer was found to have acted under color of state law where he served as a private security guard at a McDonald's restaurant wearing his police uniform and badge, and arrested plaintiffs. In *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991), *cert. denied*, 504 U.S. 917 (1992), a sheriff's deputy was determined to have acted under color of state law where he beat his wife's former lover while telling the victim that he had special authority as a sheriff's deputy to do so, told the victim he could shoot him because he was a sheriff's deputy, and he summoned other police officers to the scene to follow the victim to the edge of town.

performance of any actual or pretended duty. *Id.* at 639 (citation omitted).

This Court similarly found that an off-duty deputy sheriff had not acted under color of law when he shot and killed his girlfriend's ex-boyfriend, and, accordingly, granted the county's motion for summary judgment on the plaintiff's § 1983 claim in *Hudson v. Maxey*, 856 F. Supp. 1223 (E.D. Mich. 1994). In that case, Darryl Maxey, an off-duty Wayne County Deputy Sheriff, was spending the night at his girlfriend, Kim McCain's home when Kim's ex-boyfriend, Adam Hudson, broke into the house by climbing through the living room window. Upon being discovered inside the house, Hudson assaulted Ms. McCain. In response, Maxey took his gun out of his pocket and told Hudson to stop. He then asked Hudson if he knew who he was and what he did for a living, and Hudson answered, "Yeah, you're a sheriff." *Id.* at 1225. When Hudson refused to leave, a scuffle ensued between Hudson and Maxey, and when Hudson lunged at Maxey, Maxey shot him.

The plaintiff in *Hudson* relied upon the following facts as evidence of "state action": (1) when Maxey encountered Hudson, he had his gun drawn; (2) Maxey asked Hudson if he knew what he did for a living and Hudson answered, "Yeah, you're a sheriff"; (3) Maxey told Hudson to leave McCain's house; and (4) when Hudson refused to leave and said, "Arrest me," Maxey responded "OK, get down on the floor." *Id.* at 126-27. The Court found these facts insufficient to establish that Maxey was exercising his authority as a sheriff's deputy, explaining:

11

> [T]he focus of the analysis must be the nature of the defendant officer's actions and the factual context out of which those actions arose. In order for liability to attach, the action alleged by the plaintiff to be "under color of law" must be pursuant to some official duty or function of the officer and the factual context must be one which might reasonably be expected to require the intervention of the state through one of its agents.
>
> Here, the Court finds the instant case to present. . . personal actions, not actions "committed in the performance of any actual or pretended duty." Unlike *Stengel* in which the police officer attempted to break up an altercation between two other private citizens in a public facility, this case involved only a love triangle in which the deputy sheriff was one of the parties. Unlike *Stengel*, there is no evidence in this case that in defending his girlfriend from the assault by Hudson, Maxey was acting "pursuant to any duty imposed by [sheriff's] department regulations."

856 F. Supp. at 1228.

As in *Hudson*, in *Mendez v. City of Los Angeles*, 167 Fed. Appx. 590 (9th Cir. 2006), the court similarly found that merely showing a badge and gun is not enough to hold an off duty policy officer driving in his own car liable under § 1983 for the shooting of the plaintiff. The court explained:

> Gray was not wearing his uniform; he was in his private car; at the time of the shooting, he did not attempt to use his authority as an officer to take control of Mendez or Mondragon, such as by stopping, detaining, or arresting them. Although Gray admitted to showing his badge and gun before the shooting in order to deter Mendez from chasing him further, the record supports a finding that at the time Gray fired his weapon, he was acting as a private citizen.

*Id.* at 592.

Guided by the principles extracted from the foregoing cases, the Court concludes in this case that Plaintiff has failed to establish that Gregory Harris was acting under

color of law when he shot Marquise Blair. The only evidence Plaintiff relies upon is that when Harris observed Blair trying to steal his personal vehicle, he yelled, "Halt. Stop. Police. It's a police officer's van." It is undisputed that Harris was off-duty at the time. He was not in his uniform and he did not flash his badge. While it is true that Harris had his gun drawn and pursued Blair as he tried to escape apprehension, the uncontroverted evidence shows that the gun was Harris's personal handgun, not his service revolver. *See* Affidavit of Lieutenant Timothy Myers, ¶¶ 3-4 and Equipment Record attached thereto. While the shooting of Plaintiff's decedent is tragic, focusing, as the Court must, on the nature of the defendant officer's actions and the factual context out of which those actions arose, the Court finds that Harris's actions do not rise to the level of a constitutional deprivation as they were not taken "under color of law."

Furthermore, even if the Court were to find "state action," the Court would nonetheless find that Plaintiff has failed to make out a Section 1983 claim against the County. The County cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Liability under § 1983 may only be found if the municipality has a policy, practice or custom that resulted in the violation of constitutional rights. *Id.*, 436 U.S. at 692, 98 S.Ct. at 2037. But,

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing unconstitutional policy, which policy can be attributed to a municipal policymaker.

*City of Oklahoma v. Tuttle*, 471 U.S. 806, 820, 105 S.Ct, 2427, 2435 (1985).

Thus, in the instant case, for *Monell* liability to attach, Plaintiff must establish that the official policy of Wayne County was the moving force of the alleged constitutional violation. Plaintiff here has not met this burden.

Similarly, Plaintiff's "failure to train" theory under *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204 (1989), must fail. As the Supreme Court explained in *City of Canton,*

> The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the persons with whom the police come in contact.

489 U.S. at 388, 109 S.Ct. at 1204.

It is not sufficient to give rise to municipal liability for the plaintiff to merely show that a particular officer was unsatisfactorily trained. *Walker v. Norris*, 917 F.2d 1449, 1456 (6th Cir. 1990). Nor is it sufficient for a plaintiff to prove that an injury, accident, or incident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. *Id. See also Lewis v. City of Irvine*, 899 F.2d 451, 455 (6th Cir. 1990).

Plaintiff has not come forward with any evidence to satisfy the *Monell/City of Canton* requirements. Plaintiff argues that the only way she can prove her case and establish factual disputes sufficient to withstand summary judgment would be to depose Defendant Harris. However, as indicated, Defendant Harris has been defaulted and Plaintiff took no action within the extended discovery period to subpoena Harris to

compel him to appear for his deposition.[7] Having failed to timely seek the discovery she claims to need to prove her *Monell* claim against the County, she cannot now at this post-discovery, post-dispositive motion cut-off time claim lack of discovery to oppose Defendant's motion for summary judgment.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Wayne County's Motion for Summary Judgment be, and hereby is, GRANTED. Accordingly,

---

[7] As noted, the County is not representing Harris in this matter.

IT IS FURTHER ORDERED that Plaintiff's claim against Wayne County is DISMISSED, in its entirety, with prejudice.

        s/Gerald E. Rosen
        Chief Judge, United States District Court

Dated: September 23, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 23, 2010, by electronic and/or ordinary mail.

        s/Ruth A. Gunther
        Case Manager